UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| CRAIG WARD, et al., | |
| Plaintiffs, | |
| v. | Civ. Action No. 04-3916 (KSH) |
| PHANTOM SCREENS MANUFACTURING (INT'L) LTD., | |
| Defendant. | **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court by way of a motion filed by defendant Phantom Screens Manufacturing (Int'l) Ltd. ("Phantom") to vacate a stay that went into effect pending arbitration, and to confirm three foreign arbitration awards. Craig Ward, Glen Clausen, and Ultimate Screens, Inc. (collectively, "plaintiffs") have filed opposition to the motion, claiming that the arbitration proceedings were tainted by the arbitrator's undisclosed pre-existing friendship with defense counsel, an improper ex parte communication by defense counsel with the arbitrator, and the arbitrator's bias against Americans. Plaintiffs' opposition asks this Court to set aside the awards and order a new arbitration proceeding. For the reasons explained below, the Court does not have authority to set aside the award for the reasons advanced by plaintiffs. Phantom's motion is **granted**.

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Phantom manufactures retractable screens for doors and windows, and is incorporated under the laws of the Province of British Columbia, Canada, with its principal place of business

1

in Abbotsford, British Columbia. (Compl., docket entry # 1, ¶¶ 13–14.) Phantom uses a network of distributors throughout Canada and the United States to distribute its screens to various retailers. Plaintiffs became Phantom distributors in New York and New Jersey in June, 1998. (Id. ¶¶ 7–9.)

Plaintiffs commenced this litigation in the District of New Jersey on August 17, 2004. They alleged that Phantom had violated various state laws and Federal Trade Commission regulations by fraudulently inducing them to enter into an undisclosed franchise relationship with Phantom. On November 22, 2004, Phantom filed a separate action against plaintiffs in the Supreme Court of British Columbia, seeking to recover past due amounts and seeking a judgment of $176,569.40; an injunction enjoining plaintiffs from commencing proceedings in any court other than the courts of British Columbia; and an order requiring plaintiffs to terminate the case pending in the District of New Jersey. (Decl. of Frederick A. Nicoll, docket entry # 39, Ex. C, at ¶¶ 9–10.) Action in both cases, however, was stayed in December, 2004, after the parties agreed to arbitrate all of their claims against each other before an arbitrator in Vancouver, British Columbia. (Consent order filed Dec. 9, 2004, docket entry # 28.) The parties agreed to conduct the arbitration proceedings in accord with the International Commercial Arbitration Act of British Columbia, R.S.B.C. ch. 233, (1996), which is governed by the British Columbia International Commercial Arbitration Centre ("BCICAC"). (Id.) The parties selected Kenneth J. Glasner ("Glasner") to serve as the arbitrator.

The arbitration proceedings began on December 5, 2005, and ended on December 9, 2005. After the hearings concluded but before Glasner had issued a final decision, plaintiffs' attorney Gerald A. Marks ("Marks") moved for Glasner's recusal on grounds that he was biased in favor of Phantom. (Decl. of Glen Forrester, docket entry # 41, Ex. C.) He gave three reasons:

(1) Glasner had improper, ex parte communications with Ronald Josephson ("Josephson"), Phantom's attorney, on December 8, 2005, causing Glasner to draw negative inferences against plaintiffs; (2) Glasner failed to disclose that he and Josephson were members of the same country club; and (3) Glasner made two statements during the course of the arbitration proceedings that demonstrated anti-American sentiment.[1]  (Id.)

Glasner refused to recuse himself, setting forth his reasons in a decision dated February 13, 2006.  (Decl. of Glen Forrester, Ex. E.)  First, Glasner stated that his membership in the same country club as Josephson was irrelevant because they had never conducted business or otherwise associated with each other there.  He noted that he and Josephson were mere acquaintances and that there was "absolutely no basis for Mr. Marks' allegations."  (Id. at ¶ 46.)  Next, Glasner noted that his brief, so-called "ex parte" communication with Josephson was not improper because it did not concern the merits of the arbitration.  (Id. at ¶¶ 49–52.)  Glasner recollected that Josephson had begun complaining to him about something Marks had done earlier in the day, but that he had stopped Josephson short and instructed him to raise the matter on the record the following morning.  (Id.)  Finally, Glasner denied that there was any indication of anti-American sentiment during the arbitration proceedings.  (Id. at ¶¶ 53–54.)

Plaintiffs appealed Glasner's ruling pursuant to BCICAC International Rules of Procedure article 12.  An arbitrator appointed by the BCICAC, Murray Clemens ("Clemens"), affirmed Glasner's decision (Decl. of Gerald A. Marks, docket entry # 32, Ex. C, at ¶ 5), agreeing that Josephson's conduct in approaching Glasner may have been unwise, but ruling that Glasner handled the situation in an appropriate manner.  (Id. at ¶¶ 6–8.)  Clemens also concluded that Glasner had not violated BCICAC rules by failing to reveal that he and Josephson were

---

[1] Specifically, plaintiffs claimed that Glasner referred negatively to a cartoon of the President of the United States, George W. Bush.  (Pl's. Br., Ex. B.)  Plaintiffs also pointed to a letter dated January 6, 2006, in which Glasner stated, "I suspect there is a similar rule in the United States under the heading of 'Due Process.'"  (Id.)

members of the same country club because the connection was too attenuated to warrant disclosure. (Id.) Clemens reasoned that it is not uncommon in Vancouver to have numerous members of the bar, as well as judges and politicians, as members of the few country clubs in the city, terming the situation "a reality that cannot be avoided." (Id. at ¶ 12.) Finally, Clemens saw no proof whatsoever of anti-American sentiment. (Id. at ¶ 15.)

On August 4, 2006, Glasner issued an arbitration award in favor of Phantom, holding that: (1) plaintiffs did not have a legitimate claim for damages against Phantom (Decl. of Frederick A. Nicoll, Ex. F, at ¶ 20); (2) plaintiffs collectively owed Phantom $156,439.99 as of May 31, 2005 and Phantom was entitled to interest thereon at the rate of 1% per month (Id. at ¶¶ 22–23); and (3) Phantom was entitled to recover its costs associated with the arbitration (Id. ¶ 24). Glasner invited the parties to brief the issue of costs and subsequently rendered a decision on October 6, 2006 finding that plaintiffs owed Phantom $182,670.95 for the costs and expenses associated with the arbitration. (Decl. of Frederick A. Nicoll, Ex. G, at ¶ 20.) On April 2, 2007, Glanser rendered a third award dismissing plaintiffs' counterclaim and awarding Phantom additional costs in the amount of $928.10. (Decl. of Frederick A. Nicoll, Ex. I, ¶¶ 24–25.)

Phantom has petitioned this Court pursuant to the Federal Arbitration Act, 9 U.S.C. §207, to confirm the three arbitration awards. Plaintiffs' opposition asks this Court to set aside the three arbitration awards and order a new arbitration proceeding.

## II.   DISCUSSION

### A.  Governing Law

The process of confirming an arbitration award rendered in a foreign country is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 ("The Convention"). The Convention applies "to the recognition and

enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal." Id. at art. 1, § 1. As a signatory of the Convention, the United States applies its terms to awards rendered in fellow signatory states.

The United States enacted Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 et. seq. ("FAA"), to implement the Convention. The FAA specifies that recognizable foreign arbitration must be between a citizen of the United States and a foreign citizen and must arise out of a legal, commercial relationship, whether it be contractual or not. Id. § 202. "[T]he principal purpose for acceding to the Convention was to 'encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" Admart AG v. Stephen & Mary Birch Found., 457 F.3d 302, 307 (3d Cir. 2006), damage calc. amended by No. 04-4014, 2006 U.S. App. LEXIS 24460 (3d Cir. Sep. 28, 2006) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974)). There is no dispute that these requirements are met here, and that this action is governed by both the Convention and Chapter 2 of the FAA.

Canada, a fellow signatory, enacted the International Commercial Arbitration Act of British Columbia, R.S.B.C., ch. 233 (1996) ("Commercial Arbitration Act") to implement the terms of the Convention. To govern the Commercial Arbitration Act, the British Columbia International Commercial Arbitration Centre ("BCICAC") was created. Section 22 of the Commercial Arbitration Act states that "the Rules of the BCICAC shall govern unless all of the parties otherwise agree." Id. at § 22 (emphasis added).

The BCICAC is a permanent arbitral institution that governs arbitration procedures in accord with the Commercial Arbitration Act. The BCICAC has an elaborate set of rules and procedures used for both domestic and international arbitration proceedings (the "domestic rules" and "international rules," respectively). In this case, the international rules and procedures apply, because BCICAC rules specify that an international commercial arbitration shall be conducted in accord with the international rules unless the parties expressly agree in writing to modify the rules or to apply the domestic rules. BCICAC Int. R. of P. art. 1:2–3, available at http://www.bcicac.com/bcicac_ica_rules.php#article1. While plaintiffs claim many domestic rules were in fact violated, neither side contends that there was an agreement in writing to apply the domestic rules.

**B. Challenges and Confirmation of Arbitration Awards.**

Chapter 2 of the FAA provides:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207. "[T]he grounds for relief enumerated in Article V of the Convention are the only grounds available for setting aside an arbitral award." Admart AG, 457 F.3d at 308 (quoting Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 20 (2d Cir. 1997)) (emphasis added); see also Brandeis Instel Ltd. v. Calabrian Chems. Corp., 656 F. Supp. 160, 163 (S.D.N.Y. 1987); Ipitrade Int'l, S.A. v. Fed. Republic of Nigeria, 465 F. Supp. 824, 826 (D.D.C. 1978) ("Article V of the Convention specifies the only grounds on which recognition and enforcement of a foreign arbitration award may be refused"). This limited review of foreign arbitral awards is necessary "to avoid undermining the twin goals of arbitration, namely, settling

6

disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers, Inc. v. Weiss, 989 F.2d, 108, 111 (2d Cir. 1993).

The Convention specifies five circumstances under which a court may refuse to confirm a foreign arbitration award:

> 1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
>     (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>     (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>     (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
>     (d) <u>The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;</u> or
>     (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

The Convention art. 5, Dec. 29, 1970, 21 U.S.T. 2517 (emphasis added). Plaintiffs cite to Article V, § 1(d) as a basis for this Court to refuse confirmation of the arbitration awards, raising the same arguments they made in the appeal to the BCICAC, namely that Glasner had improper ex parte communication with Phantom's attorney, Josephson, and that he failed to disclose his business or social relationship with Josephson, resulting in an arbitration procedure that was not in accord with the agreement of the parties. Specifically, plaintiffs allege that the ex parte

7

communication violated BCICAC International Rules of Procedure article 10 § 3, which prohibits ex parte communication on the merits of the current arbitration proceeding. Citing to article 10, §§ 1–2 of the international rules, plaintiffs also claim that Glasner was required to disclose any and all circumstances that would give rise to reasonable doubts about his impartiality or independence.[2] Plaintiffs thus contend that the arbitration procedure was not conducted in accordance with the BCICAC, and that as a result the arbitration awards must be vacated.

**C. Plaintiffs' attempt to vacate the arbitration award fails because none of the grounds available for relief under the Convention is available.**

Article 12 of the BCICAC international rules sets forth the procedures for challenging a decision of an arbitrator. Int. R. of P., art. 12. The aggrieved party must first challenge the decision with the arbitrator who made the decision. Id. at art. 12 § 4. If the challenge is unsuccessful, Article 12 § 4 permits the challenging party to appeal the decision to the BCICAC within 30 days after having received notice of the arbitrator's decision. Article 12 § 5 states that "The decision of the Centre under §4 is final." Id. (emphasis added). These procedures were followed—plaintiffs first appealed to Glasner, who denied the request that he recuse himself; thereafter they appealed to Clemens, an arbitrator appointed by the BCICAC to hear the appeal, who affirmed.

Although plaintiffs have framed their argument as a challenge involving a flaw in the "procedures" agreed upon by the parties, they are actually arguing that both Glasner and Clemens made erroneous findings of law, a prohibited basis upon which this Court could vacate

---

[2] International Article 10, §§ 1–2 state: "(1) The arbitrator shall remain at all times wholly independent and impartial. (2) To accept an appointment, an arbitrator must sign and provide the center with a written declaration that the arbitrator knows of no circumstances likely to give rise to justifiable doubts as to the arbitrator's independence and impartiality. The arbitrator shall disclose any such circumstance to the parties without delay should it arise before arbitration is concluded. Int. R. of P., available at http://www.bcicac.com/bcicac_ica_rules.php.

the award.  Admart AG, 457 F.3d at 308 (stating that "mistake of law and manifest disregard of the law do not justify setting aside [a foreign arbitral] award").  This Court is satisfied that the arbitration proceedings were conducted in a manner consistent with the procedures agreed upon by the parties, and must confirm the award.  In a situation such as this where none of the five grounds for relief under the Convention are available, only a court of British Columbia, the forum that issued the arbitral award, has the authority to set it aside.  Yusuf, 126 F.3d at 22.

### III.   CONCLUSION

For the foregoing reasons, Phantom's motion to vacate the stay and confirm the arbitration awards is **granted**.  An appropriate order will be entered.

Dated: August 8, 2007                                         /s/  Katharine S. Hayden

                                                              Katharine S. Hayden, U.S.D.J.